Kris A. McLean
Tyson A. McLean
Kris A. McLean Law Firm, PLLC
2315 McDonald Ave., Suite 106
Missoula, MT 59801
kris@krismcleanlaw.com
tyson@krismcleanlaw.com

Julie Weis
HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
jweis@hk-law.com
(Motion for admission *pro hac vice* pending)

*Attorneys for Proposed Defendant-Intervenor*
*Kootenai Tribe of Idaho*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. FOREST SERVICE, *et al.*,<br><br>Defendants.<br><br>KOOTENAI TRIBE OF IDAHO,<br><br>Proposed Defendant-Intervenor. | Case No: 9:22-cv-00114-DWM<br><br>**DECLARATION OF SCOTT SOULTS** |

I, Scott Soults, being sworn, declare as follows:

1. I am the Fish and Wildlife Department Wildlife Division Manager for the Kootenai Tribe of Idaho (the Kootenai Tribe or the Tribe). I make this declaration based on personal knowledge and in support of the Tribe's motion to intervene in this lawsuit challenging the Forest Service's Black Ram Project (the Project) on the Kootenai National Forest (the Forest). I am over the age of 18, and if called as a witness would testify competently as follows.

2. I am a wildlife biologist who holds a Bachelors of Science degree in wildlife biology (with a minor in botany and zoology) from the University of Montana, obtained in 1991. From 1995-97, I also studied raptor biology at Boise State University and undertook post-graduate course work. Prior to that (1985), I obtained an associate's degree in business administration from Scott Community College.

3. I have been working as a wildlife biologist in various capacities since 1989, when I started working on northern spotted owl issues with the Forest Service on the Mt. Hood National Forest. Until 1993, I worked with the Forest Service on interdisciplinary teams in timber sale planning and with the Washington, D.C. Spotted Owl Supplemental Environmental Impact Statement



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Team based in the Region 6 regional office. Among other responsibilities, I planned, organized and implemented a regional spotted owl surveying and monitoring program on 150,000 acres of wilderness.

4. From 1993-96, I became certified as an Environmental Site Assessor and worked for a private environmental consulting company where, among other things, I completed Phase I and Phase II Environmental Site Assessments. From 1996-97, I ran my own private consulting company where I conducted biological and environmental assessments and offered wetland delineations, Idaho threatened and endangered species consultations and various evaluations, among other tasks.

5. From 1997-99, I was employed with the United States Department of Agriculture Natural Resources Conservation Service (NRCS) in Missouri where I provided wildlife habitat program assistance to not only the NRCS but also to the Missouri Department of Conservation, Missouri Department of Natural Resources, landowners and other entities, including the U.S. Fish and Wildlife Service (FWS). My responsibilities included quail, pheasant, rabbit and turkey habitat enhancements, agricultural production methods and economics for conservation practices related to the State of Missouri NRCS open lands program on the restoration of 1.1 million acres of public and private lands.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

6. I joined the Kootenai Tribal Fish and Wildlife Department in 1999 and have been here ever since. Originally, my job responsibilities focused on developing a wildlife program to enhance Tribal subsistence gathering and hunting opportunities, increasing hydroelectric mitigation participation, and recovering, protecting and managing sustainable native wildlife populations and habitats. In many respects, those job responsibilities were interrelated due to the operational impacts of Libby Dam, which became fully operational in 1975.

7. Libby Dam, located on the Kootenai River, was built for hydroelectric power production, flood control and recreation. Its operations altered historic flow patterns in the lower Kootenai River, caused a loss in biological productivity and dewatered previously inundated riparian areas, among other detrimental environmental impacts. Prior to Libby Dam's construction, the floodplains had been highly productive and functional wetlands that supported Tribal hunting, fishing and gathering. Species like Kootenai River white sturgeon and burbot were primary food sources for the Kootenai people, who also fished and hunted for kokanee, westslope cutthroat trout, deer, elk and moose, all of which were supported by the Kootenai River in one way or another.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

8. I continue to do mitigation work for the Tribe as a wildlife biologist, and the Tribe has hired two more biologists and two wildlife technicians to help with this important effort. We currently are preparing to build a conservation nursery to grow native plants historically associated with floodplain and riparian habitats for use in our restoration efforts.

9. As the Kootenai Tribe's Wildlife Division Manager, I oversee the policy and programmatic aspects of Tribal wildlife and related habitat issues. I also provide subject matter and policy development briefings to the Kootenai Tribal Council on a regular basis and provide representation on Tribal policy positions in multiple regional and local forums involving stakeholders from the state, county, Kootenai Valley Resource Initiative, FWS, Forest Service and other entities.

10. The Kootenai Valley Resource Initiative (KVRI) formed in 2001 at the urging of the Tribe, whose belief in collaborative approaches and community involvement led it to approach the City of Bonners Ferry and Boundary County, Idaho about forming an organization that would foster citizen participation in protecting and restoring natural resources in the Kootenai River Valley. KVRI membership includes the Tribe, local governments, federal and state agencies,



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

environmental advocacy groups, representatives of business and industry, and private citizens and landowners. KVRI subcommittees focus on different natural resource areas – the Forestry Subcommittee focuses on addressing forest issues using a landscape approach, for example, whereas the Grizzly Bear Subcommittee focuses on educating community members about grizzly bear management, recovery, the prevention of human/bear conflict, bear attractants and related matters.

11. The Tribe and its KVRI partners engage in real, hands-on efforts aimed at promoting a more holistic, ecosystem-oriented approach to restoring healthy ecosystem functions for the benefit of natural resources. For example, the Tribe and its KVRI partners are active proponents of forest restoration work on the Idaho Panhandle National Forest, including through the Collaborative Forest Landscape Restoration Program, which was established by Congress in 2009 to "encourage the collaborative, science-based ecosystem restoration of priority forest landscapes." 16 U.S.C. § 7301. The Tribe also participated actively in the most recent Forest Plan revision process for both the Kootenai and Idaho Panhandle National Forests – I personally participated in the ecological review process for the Forest Plans.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

12. As the Kootenai Tribe's Wildlife Division Manager, I work closely with Gary Aitken, Jr., the Tribal Council Vice-Chairman who is responsible for Tribal Council oversight of natural resource matters. He also serves as the Tribe's official representative on the Interagency Grizzly Bear Committee's (IGBC) Selkirk/Cabinet-Yaak Subcommittee and has tasked me with attending Subcommittee meetings as his delegate.

13. After the grizzly bear was listed under the Endangered Species Act in 1975 as a threatened species, FWS developed a recovery plan that identified six recovery ecosystems, including the Selkirk and Cabinet-Yaak ecosystems. The IGBC's Selkirk/Cabinet-Yaak Subcommittee is responsible for overseeing those two ecosystems – the Subcommittee's detailed role is available at this link: https://igbconline.org/committees/selkirk/#1628200502176-fc1d4348-7ae7. The Selkirk/Cabinet-Yaak Subcommittee meets two times per year, and I report back to the Vice-Chairman on whether the Subcommittee is following Tribal desires and needs with respect to the bear. Tribes originally were not represented on the IGBC Subcommittees but pushed for and obtained representation because of the Tribal importance of the species.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

14. One thing I am advocating for on the Subcommittee is for FWS to help fund a permanent Northern Idaho conflict biologist for the bears. Conflicts between humans and bears may end poorly for the bear but often can be avoided. This past summer, for example, two grizzly bears were killed for management purposes (i.e., assessed as habituated after bears repeatedly killed/fed on livestock) in the Kootenai River Valley. I believe humans and bears could better coexist if we further educated the community on the benefits of doing such things as reducing bear attractants and improving security measures by installing electric fences.

15. To follow the Kootenai Tribe's holistic approach to natural resources conservation and restoration, I try to understand the Tribe's historical uses of natural resources as best I can (much of the Tribe's sacred history cannot be shared with non-Kootenai like myself). Through my conversations with Tribal elders, many of whom have passed, I have learned much about the relationship between natural resources restoration and Tribal needs. Tribal elders have taught me that the Forest looks wrong, not like it looked when they were young and the Forest was healthy and resilient. Historically, the Kootenai people actively managed the forest landscape, including through the use of fire, to meet Tribal and natural

resource needs based on traditional knowledge. But under federal management, fire was restricted on the forest landscape, which decreased forest resiliency to disturbance and resulted in an unhealthy forest ecosystem that today endangers Kootenai resources.

16. I am familiar with the Black Ram Project area because I have and will continue to recreate in the area. My property in Moyie Springs, Idaho is located to the southwest of the Project area, and adjacent to the northwest corner of Montana. The Project area encompasses a diverse landscape within the Northwestern Montana Forest Region. The forests within the Project area include those where the mountain range climate is cool temperate with some inland maritime influence, along with forested habitats that are lower elevation and characterized by dry forest types. The management of high elevation, moist forested habitat where the fire return interval historically was on the order of hundreds of years differs from that of warm/dry forested habitat where fire was an integral part of the landscape and kept ladder fuels in check. Forest Service professionals apply this knowledge and employ landscape/biological assessments, habitat typing characteristics and site-specific silvicultural prescriptions to each treatment unit.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

17. From a professional perspective, because the Black Ram Project is in Kootenai Territory and involves Kootenai resources, the Tribe engaged with the Forest Service both at the staff level and through government-to-government consultation during Project development. Tribal staff like myself meet regularly with Forest Service specialists to discuss land management projects and the Kootenai Tribe's perspective on those projects. Once or twice a year, Tribal Council meets with the Forest Supervisor in government-to-government consultation.

18. On Black Ram, Tribal staff (including myself) met with the Forest Service, beginning during pre-scoping and continuing through Project development and approval, to discuss potential impacts on cultural resources, hunting, recreation, huckleberries, aquatic resources, old-growth management, fire management, ungulate winter range, and grizzly bears, among other things. From the outset, I was pleased to see that the Forest Service was proposing a significant number of acres for fuels reduction and a significant number of miles for road storage – the Project Decision Notice allows for 3,581 acres of fuels treatment with timber harvest and 7,553 acres of fuels treatment without timber harvest, for a total of more than 11,000 acres of fuels treatments, along with the storage of 32 miles of



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

roads, plus the decommissioning of about 23 miles of roads. These activities continue to be based on sound professional review and will be beneficial to the forest ecosystem and Kootenai resources.

19. Regarding the grizzly bear itself, since the Project is located in two Bear Management Units, Bear Management Unit 14 (Northwest Peaks) and Bear Management Unit 15 (Garver), we talked with the Forest Service about potential proposed action and alternatives impacts and related activities on the bear and ways to avoid such impacts. Grizzly bear core areas on the Forest are those portions of a bear management unit greater than 500 meters from a motorized route. The Forest Plan requires that projects either insure no net loss of core or provide for in-kind replacement of core habitat. The Project will do the latter – the in-kind replacement of core habitat would maintain the existing core in the Northwest Peaks Bear Management Unit and slightly exceeds the Forest Plan requirement for a 1:1 in-kind exchange in the Garver Bear Management Unit. In addition, approximately 34 miles of Kootenai National Forest roads will be stored for in-kind replacement of Core lost by road-related Project activities. (The August 2022 Biological Opinion for the Project states that both Bear Management Units will have slightly more core habitat compared with the existing condition,



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

but conservatively states that core habitat within each will basically remain constant.) Ultimately, the Tribe determined the Forest Service's approach was reasonable and appropriate with respect to the Kootenai National Forest Plan and this species of Tribal importance.

20. We took our own hard look at other potential issues, and continue to do so. The Tribe was pleased with the combined aces of ecosystem burning and other land management activities that should help move the Forest towards desired tree species, age, composition and habitat function, and reduce the risk of high intensity wildfire both inside of and outside of wildland urban interface areas. By reducing the risk of high intensity wildfire, desirable fire behavior can be returned to the Forest. We ultimately concluded the Project was consistent with the Tribe's holistic and proactive approach towards ecosystem-based land management within Kootenai Territory, which is not founded on excluding humans from the landscape. The Tribe has always interacted with the forest landscape and views the exclusion of humans as an impediment to forest restoration. The Tribe also understands that the Project area is not managed for the benefit of any one species exclusively but rather is managed to meet the habitat needs of diverse species of importance to the Tribe, including moose, deer and elk, just to name a few.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

21. I mentioned above that the Tribe continues to take a hard look at the Project. We are aware that some people continue to criticize the Project publicly, and when they do, we assess their comments on our own. For example, when Wild Heritage criticized the proposed treatments in the Project's Unit 72, we took our own hard look at their comments. Wild Heritage seemed not to know that in response to comments from the Yaak Valley Forest Council and Kootenai Forest Stakeholders Coalition, the Forest Service interdisciplinary team modified Unit 72 by dividing it into three separate units and adding more leave areas. Wild Heritage's comments also were based on zero data – to our knowledge, no data was measured, recorded or documented, with the comments based solely on observations/eye-estimations, which was frustrating since old growth habitat types, structural characteristics and metrics were clearly defined by Green (et al.) in 1992. Green, P., J. Joy, D. Sirucek, W. Hann, A. Zack, and B. Naumann. 1992. Old-growth forest types of the Northern Region. Report R-1 SES 4/92. The absence of GPS information on stated observations makes it difficult (or impossible) to know where in Black Ram the observations were made, which is particularly troubling since the Forest Service interdisciplinary team redrew the Unit 72 boundaries in response to public comment.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

22. Finally, this case implicates the Forest Service's Access Amendments, adopted via the agency's Record of Decision for Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones. The decision amended the Forest Plans for the Kootenai, Lolo, and Idaho Panhandle National Forests to better control motorized access in grizzly bear habitat for the benefit of the bear. Later-adopted Forest Plans, like the 2015 Kootenai National Forest Plan, incorporated the Access Amendments directly. The Kootenai Tribe believes the Grizzly Bear Access Amendments reasonably balance the need to protect natural resources with the need for human access to National Forests for ecological restoration and exercise of Treaty and religious rights. I and others in the Tribal Fish and Wildlife Department worked extensively on the Grizzly Bear Access Amendments, and I believe the process and the end results were sound for both human and non-human species on the Forest. We continue to study and learn from grizzly bear distribution and movements, suitable bear seasonal habitat data and DNA hair corral/rub-tree surveys. I hope we can continue to do so going forward without disruption for the benefit of the Kootenai Tribe and Kootenai resources that are at the heart of the Tribe's existence and culture.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

**I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.**

Dated this 19th day of October, 2022.

Scott Soults



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of October, 2022, I served a true and correct copy of the foregoing document, via CM/ECF on:

Clerk of U.S. District Court

Ronni M. Flannery
LAW OFFICE OF RONNI M. FLANNERY
936 South 2nd Street, West
Missoula, MT 59801
rflannery@bresnan.net

Andrea Zaccardi
CENTER FOR BIOLOGICAL DIVERSITY
PO Box 469
Victor, MT 83455
azaccardi@biologicaldiversity.org

Edward B. Zukoski
CENTER FOR BIOLOGICAL DIVERSITY
1536 Wynkoop Steet, Suite 421
Denver, CO 80202
tzukoski@biologicaldiversity.org

Marla Fox
WILDEARTH GUARDIANS – PORTLAND
P.O. Box 13086
Portland, OR 97213
mfox@wildearthguardians.org

Sara K. McMillan
WILDEARTH GUARDIANS – MISSOULA
117 W. Broadway
P.O. Box 7516
Missoula, MT 59801
smcmillan@wildearthguardians.org

*Attorneys for Plaintiffs Center for Biological Diversity, Yaak Valley Forest Council and WildEarth Guardians*

Erika Furlong
U.S. DEPARTMENT OF JUSTICE –
E.N.R.D. WILDLIFE & MARINE SECTION
150 M Street NE
Washington, DC 20002
erika.furlong@usdoj.gov

Hayley A. Carpenter
U.S. DEPARTMENT OF JUSTICE –
E.N.R.D.
150 M Street NE
Washington, DC 20002
hayley.carpenter@usdoj.gov

*Attorneys for Defendants*

By: /s/ Kris A. McLean