Kris A. McLean
Tyson A. McLean
Kris A. McLean Law Firm, PLLC
2315 McDonald Ave., Suite 106
Missoula, MT 59801
kris@krismcleanlaw.com
tyson@krismcleanlaw.com

Julie Weis
HAGLUND KELLEY LLP
2177 SW Broadway
Portland, OR 97201
jweis@hk-law.com
(Motion for admission *pro hac vice* pending)

*Attorneys for Proposed Defendant-Intervenor Kootenai Tribe of Idaho*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. FOREST SERVICE, *et al.*,<br><br>Defendants.<br><br>KOOTENAI TRIBE OF IDAHO,<br><br>Proposed Defendant-Intervenor. | Case No: 9:22-cv-00114-DWM<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |

# TABLE OF CONTENTS


I. INTRODUCTION........................................................................1

II. FACTUAL BACKGROUND........................................................1

A. Overview of the Tribe.........................................................1

B. Overview of the Black Ram Project ....................................5

C. Overview of the Tribe's Perspective on the Project...................8

III. LEGAL STANDARDS..................................................................10

A. Intervention As of Right ..................................................10

B. Permissive Intervention.................................................... 11

IV. ARGUMENT...........................................................................12

A. The Tribe Should be Allowed to Intervene as of Right..............12

1. The motion is timely........................................................12

2. The Tribe has a protectable interest at stake that relates to the subject matter of this lawsuit..................................13

3. The Tribe's interests will be impaired if not represented.........17

4. The existing parties do not represent the Tribe's interests.......18

B. Alternatively, the Court Could Allow Permissive Intervention.....20

V. CONCLUSION.........................................................................21




HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ........................................ 11, 13

*County of Orange v. Air California*,
799 F.2d 535 (9th Cir. 1986) ........................................ 12

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011) ........................................ 18

*Idaho Farm Bureau Fed's v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ........................................ 13

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 ........................................ 11, 12, 20, 21

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) ........................................ 19

*Sierra Club v. U.S. EPA*,
995 F.2d 1478 (9th Cir. 1993), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 ........................................ 13

*Smith v. Los Angeles Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ........................................ 12

*Southwest Ctr. for Biological Diversity v. Babbitt*,
150 F.3d 1152 (9th Cir. 1998) ........................................ 18

*Southwest Ctr. For Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ........................................ *passim*

*State v. Coffee*,
556 P.2d 1185 (Idaho 1976) ........................................ 14



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

*The Kootenai Tribe or Band of Indians of the State of Idaho v. United States*,
8 Ind. Cl. Comm. 504 (1960) .......... 2-3

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... 18, 19

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) .......... 13

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) (en banc) .......... 1,14

**Statutes and Other Authorities**

Indian General Allotment Act of 1887, 24 Section 4 Stat. 388, as amended, 25 U.S.C. § 331 *et seq.* .......... 3

Hellgate Treaty, 12 Stat. 975 (July 16, 1855) .......... 2

Federal Rule of Civil Procedure Rule 24(a) .......... *passim*

Federal Rule of Civil Procedure Rule 24(b) .......... *passim*

http://www.ktunaxa.org .......... 2



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

## I. INTRODUCTION.

The Kootenai Tribe of Idaho (the Kootenai Tribe, or the Tribe) seeks to intervene on the side of federal defendants in this case involving the Black Ram Project on the Kootenai National Forest's Three Rivers Ranger District in Lincoln County, Montana. The Federal Rules of Civil Procedure (FRCP) allow entities to intervene in pending litigation to protect their interests either as of right under FRCP 24(a) or permissively under FRCP 24(b). In 2011, the Ninth Circuit abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion to intervene should be evaluated based solely on the FRCP 24 intervention factors discussed below. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). The Kootenai Tribe satisfies the requirements for intervention.

## II. FACTUAL BACKGROUND.

### A. Overview of the Tribe.

The Kootenai Tribe has a strong interest in implementation of the Black Ram Project (the Project, or Black Ram) on the Kootenai National Forest. The Tribe's interest in the Project stems from the Tribe's relationship with the land and natural resources in the Project area.

The Tribe is headquartered near the town of Bonners Ferry in Idaho's Kootenai River Valley. Declaration of Gary Aitken, Jr. (Aitken Decl.) ¶ 3. The Kootenai (Ktunaxa) Nation as a whole consists of seven modern bands, including two in the United States – the Kootenai Tribe of Idaho and the Confederated Salish and Kootenai Tribes of the Flathead Reservation – and five in Canada. *See generally* http://www.ktunaxa.org. These bands have inhabited portions of Idaho, Montana, Washington, British Columbia and Alberta since time immemorial and are divided into Lower and Upper Kootenai groups. Aitken Decl. ¶ 3.

The Kootenai Tribe belongs to the Lower Kootenai group, which historically inhabited the area along the Kootenai River from above Kootenai Falls in present-day Montana to Kootenay Lake in present-day British Columbia. *Id.* In 1855, the Kootenai, Salish and Flathead Indians were called to a treaty session at Hellgate, Montana for the purpose of ceding territory to the United States government. The Salish and Upper Kootenai Tribes entered into the Hellgate Treaty with the United States on July 16, 1855, 12 Stat. 975, thereby ceding the majority of the Kootenai Territory and creating a reservation near Flathead Lake for the newly-created Confederated Salish and Kootenai Tribes. Although the Kootenai Tribe did not participate in the negotiations or sign the Treaty, the Treaty cession included the Idaho Kootenai's aboriginal lands. *See generally The Kootenai Tribe or Band of*

*Indians of the State of Idaho v. United States*, 8 Ind. Cl. Comm. 504 (1960) (Doc. 154).

Years later, after acknowledging that the Kootenai Tribe was separate and distinct from the Kootenai of the Flathead, representatives of the United States government traveled to the Bonners Ferry area and demanded that Tribal citizens remove themselves to the Flathead Reservation. After limited success, the government's Indian agents relented, and the remaining Tribal citizens stayed in the Kootenai River Valley. They later received land allotments under Section 4 of the Indian General Allotment Act of 1887, 24 Stat. 388, as amended, 25 U.S.C. § 331 *et seq*.

Article III of the Hellgate Treaty reserved to the Kootenai Tribe the right to fish at usual and accustomed fishing places and hunt and gather on open and unclaimed lands. Open and unclaimed lands include national forest lands located in Ktunaxa Territory, primarily the Kootenai and Idaho Panhandle National Forests. Tribal citizens continued to hunt, fish and gather throughout Ktunaxa Territory, but over time this became increasingly more difficult. Tribal allotments were lost to non-Indians through fraudulent transactions and surveying errors, and the increasing private ownership of property led to decreased hunting, fishing and harvesting opportunities. To make matters worse, the national forests in Ktunaxa



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Territory were subject to misguided management that removed fire from the forest landscape and decreased forest resiliency to disturbance. Aitken Decl. ¶ 13. This resulted in an unhealthy forest ecosystem, decreased game and endangerment of Kootenai Treaty resources, all to the detriment of Kootenai Tribal citizens. *Id.*

The Tribe has a significant interest in the subject of this action. For example, the Tribe is committed to restoring forests in and around Ktunaxa Territory, including on the Kootenai National Forest, and works collaboratively with the Forest Service on projects like Black Ram that implicate the Tribe's ancestral homelands. *Id.* ¶ 8. The Tribe also focuses on keeping its original covenant to guard the land forever – its very identity depends on caring for the native fish and wildlife species in Ktunaxa Territory. *See id.* ¶¶ 4, 8, 13. The Tribe possesses federally-reserved hunting, fishing and gathering rights on the Kootenai National Forest, and it also plays an active role in protecting and restoring natural resources, including the grizzly bear. *Id.* ¶ 7; Declaration of Scott Soults (Soults Decl. ¶¶ 13-14). And the Tribe worked collaboratively with the Forest Service during the development of the Grizzly Bear Access Amendments, Aitken Decl. ¶ 14; Soults Decl. ¶ 22, as it did at every stage of Black Ram Project development. Aitken Decl. ¶¶ 9-10; Soults Decl. ¶¶ 17-20. The Tribe supports the Project and desires to see it implemented. Aitken Decl. ¶ 10; Soults Decl. ¶ 20.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

**B. <u>Overview of the Black Ram Project</u>.**

The Black Ram Project area comprises 95,412 acres, more than 96% of which (91,647 acres) are national forest lands. Declaration of Julie Weis Attaching Exhibits (Weis Decl.), Ex. A at 2 (Black Ram Environmental Assessment (EA) at 1). The Project area is to the north and west of Troy, Montana and is bordered on the north by Canada, on the south by the Yaak River, on the east by the Wood Mountain/Grubstake ridgeline and on the west by the Pete Creek Watershed. *Id.* The following map illustrates the Project location:




*Id.*, Ex. B at 1 (July 11, 2018 Black Ram Scoping Activities Map).



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

The Forest Service developed the Project through a public National Environmental Policy Act (NEPA) process with the goal of "manag[ing] the forest stands in the project area to maintain or improve their resilience to disturbances such as drought, insect and diseases outbreaks, and wildfires." *Id.*, Ex. C at 2 (July 12, 2018 Black Ram Scoping Package at 5). The Project is designed to address these concerns and move the landscape toward desired conditions in the 2015 Forest Plan. *Id.*, Ex. D at 2 (Black Ram Decision Notice/Finding of No Significant Impact (DN/FONSI) at 1). Because of the Tribe's relationship with Ktunaxa resources within the Project area, the Forest Service consulted and shared information with the Tribe (and its Sister Tribe the Confederated Salish and Kootenai Tribes) during Project development. *Id.*, Ex. A at 4, 5, 7 (Black Ram EA at 4, 66, 435).

The Black Ram Project was developed to meet six purposes and needs.

First, the Project will promote a more resilient forest landscape by managing for desired "landscape-level vegetation patterns, structure, patch size, fuel loading and species composition." *Id.*, Ex. A at 2 (Black Ram EA at 1). *See also id.*, Ex. A at 3 (Black Ram EA at 2) (explaining that managing for a more resilient forest landscape includes such actions as fostering the development of desired tree



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

species, like western larch, ponderosa pine and western white pine, and by creating conditions where fire can play its historical role in the Project area).

Second, the Project will "[m]aintain or improve watershed conditions," including by reducing the introduction of sediments into water bodies and through road improvement and stabilization efforts. *Id.*, Ex. A at 3 (EA at 2).

Third, the Project will "[i]mprove big game winter range conditions and promote forage opportunities," including by working to improve the productivity of native plants including huckleberry. *Id.*

Fourth, the Project will "[m]aintain and improve recreation opportunities" for members of the public. *Id.*

Fifth, the Project will decrease "the potential for high intensity wildfire while promoting desirable fire behavior characteristics and fuel conditions in the Wildland Urban Interface," where people and the things they value are in particularly close contact with wildland areas. *Id.* On this point, the Forest Service knows it cannot eliminate wildland fire risk in the Wildland Urban Interface, but what it can do is "adjust the stand structures, fuel loadings, and continuity of the forested areas" to better protect people, property and natural resources in the Project area. *Id.*



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Sixth, the Project will generate forest products through the "sustainable supply of timber products." *Id.*

Although the Project area comprises 95,412 acres, 91,647 acres of which are national forest lands, commercial timber harvest is authorized on only 3,902 acres, or about 4% of the Project area. *Id.*, Ex. D at 3 (DN/FONSI at 7 (Table 1)). Of those 3,902 acres, 1,485 acres are located in the Wildland Urban Interface, which also will benefit from 2,883 acres of non-harvest fuels reduction treatment. *Id*

### C. Overview of the Tribe's Perspective on the Project.

From the Tribe's perspective, plaintiffs' lawsuit ignores the important purposes and needs of the Black Ram Project and instead seeks to halt all beneficial on-the-ground activities for one primary reason, namely plaintiffs' belief that the Project will adversely affect the grizzly bear population. *See generally* Complaint. The Tribe's review of plaintiffs' September 2022 Notice of Intent to Sue for Violations of the Endangered Species Act, which is anticipated to result in the filing of an amended complaint, confirms plaintiffs' grizzly bear focus of this case. The Tribe disagrees with plaintiffs, although it also seeks to advocate for the needs of the bear, Soults Decl. ¶¶ 13-14, 19, and to protect natural resources like huckleberries that are an important food source for the bear. Aitken Decl. ¶ 9; Soults Decl. ¶ 18. *See also* Weis Decl., Ex. A at 6 (Black Ram EA at 306)



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

(discussing fact that huckleberries "are an important food source for grizzly bears in this ecosystem").

The Tribe's approach to responsible land management within Ktunaxa Territory does not seek to exclude humans from the landscape – Tribal peoples have "always interacted with the forest landscape," which fosters responsible land management. Soults Decl. ¶ 20. Tribal elders teach that national forest lands in Ktunaxa Territory look "wrong," not like they looked many years ago when the forests were "healthy and resilient," before beneficial fires were restricted on the landscape. *Id.* ¶ 15. The Tribe thus supports the Forest Service's efforts to restore forest resiliency through projects like Black Ram, which seeks to employ the Forest Service's expert silvicultural knowledge to responsibly "move the existing resource conditions in this project area toward the desired conditions as stated in the 2015 Forest Plan," Weis Decl., Ex. D at 2 (DN/FONSI at 1), for the benefit of the forest ecosystem as a whole.

Also implicated in this case are the Grizzly Bear Access Amendments, which the Kootenai Tribe believes reasonably balance the need to protect natural resources with the need for human access to, and ecological restoration on, national forest lands. Aitken Decl. ¶ 14 (explaining that the Tribe "seeks to preserve the carefully struck balance embodied in the Access Amendments,"



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

including to ensure Tribal access to national forest lands for the "exercise of Treaty and religious rights"). The Access Amendments are the end result of extensive efforts, including on the part of the Tribe, and are "sound for both human and non-human species[']" use of the Kootenai National Forest. Soults Decl. ¶ 22. From the Tribe's perspective, the careful balance struck in the Access Amendments should not be disturbed.

## III. LEGAL STANDARDS.

FRCP 24's legal requirements for intervention as of right and permissive intervention are set forth below. In evaluating these requirements in the context of a pending motion, the Court should accept as true all nonconclusory allegations submitted in support of the motion to intervene. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . as true absent sham, frivolity or other objections.").

### D. Intervention As Of Right.

The Ninth Circuit applies a four-part test in evaluating a motion for intervention as of right pursuant to FRCP 24(a):

(1) the application for intervention must be timely;



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

(2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and

(4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Berg*, 268 F.3d at 817. The test is applied "liberally in favor of potential intervenors," and the Court's analysis "is guided primarily by practical considerations, not technical distinctions." *Id.* at 818 (internal quotation marks omitted). *See also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (emphasizing that "the requirements [for intervention] are broadly interpreted in favor of intervention").

**E. <u>Permissive Intervention</u>.**

A district court also has broad discretion to grant permissive intervention pursuant to FRCP 24(b). *See generally Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09, 1110-11 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (abrogated by the en banc panel to the extent it relied on the now-abandoned federal defendant rule). As explained by *Kootenai Tribe*, if a motion for intervention is timely, a court may allow intervention under FRCP 24(b) "'when an applicant's claim or defense and the main action have a



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

question of law or fact in common.'" *Id.* at 1111 (quoting the Rule). Thus, unlike intervention as of right, permissive intervention has no protectable interest or adequacy of representation requirement and "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Id.* at 1108 (internal quotation marks omitted).

## IV. ARGUMENT.

The Tribe satisfies the criteria for intervention as of right under FRCP 24(a) or, alternatively, permissive intervention under FRCP 24(b).

### A. The Tribe Should be Allowed to Intervene as of Right.

#### 1. The motion is timely.

To determine whether a motion to intervene is timely, district courts in the Ninth Circuit typically weigh three factors: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). The key consideration is whether intervention will prejudice the existing parties. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016).

The Tribe's motion is timely. Plaintiffs filed their complaint on June 30, 2022 and are likely to file an amended complaint after the running of the 60-day notice period on their Notice of Intent to Sue for Violations of the Endangered



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Species Act. The administrative record(s) have not yet been filed in this case, nor has substantive briefing begun. Further, the existing parties do not oppose (take no position on) the Tribe's participation in this case, which is evidence of lack of prejudice.

Because the proposed intervention at this early stage will not prejudice the parties, the motion is timely. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion to intervene filed four months after plaintiff filed suit was timely where it was filed "before any hearings or rulings on substantive matters").

**2. The Tribe has a protectable interest at stake that relates to the subject matter of this lawsuit.**

The protectable interest requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (internal quotation marks and citation omitted). No specific legal or equitable interest must be established. *Citizens for Balanced Use*, 647 F.3d at 897. Under Ninth Circuit case law, it generally is "enough that the [proposed intervenor's] interest is protectable under *some law*, and that there is a relationship between the legally protected interest and the claims

at issue." *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) (emphasis added), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173. The en banc *Wilderness Soc'y* decision also confirmed that an asserted interest need only relate to the "'property or transaction that is the subject of the action[,]' such that the focus is on the property or transaction at issue," not on plaintiffs' legal claims. 630 F.3d at 1178 (quoting FRCP 24(a)).

The Kootenai Tribe is a sovereign with a protectible interest in the management of healthy forests in Ktunaxa Territory. The Tribe is committed to restoring forests in and around Ktunaxa Territory, including on the Kootenai National Forest, through the implementation of sound restoration projects like Black Ram. Aitken Decl. ¶ 13. The Tribe is a responsible sovereign that focuses its energies and determination on remaining true to its creation story by keeping the Creator-Spirit's Covenant to guard and keep the land forever so that the land in turn will provide for the Kootenai people. *Id.* ¶ 4. And it continues to possess federally-reserved hunting, fishing and gathering rights within its lands and in certain off-reservation areas, including on the Kootenai National Forest. *See, e.g.*, *State v. Coffee*, 556 P.2d 1185 (Idaho 1976).

The Tribe plays an active and innovative role in protecting and restoring natural resources, which includes advocating for, and collaborating in, forest

restoration efforts on national forest lands. *See, e.g.*, Soults Decl. ¶ 11 (discussing forest restoration efforts); Aitken Decl. ¶ 6 (discussing Kootenai River white sturgeon restoration efforts); Aitken Decl. ¶ 7 (discussing the Tribe's role on the Interagency Grizzly Bear Committee's Selkirk/Cabinet-Yaak subcommittee); Soults Decl. ¶¶ 12-14 (same). Because of the Tribe's commitment to caring for wildlife habitat on national forest lands, the Tribe worked collaboratively with the Forest Service during the development of the Grizzly Bear Access Amendments, advocating for a programmatic approach that would provide flexibility in forest management, public coordination, Tribal consultation and administrative access. Aitken Decl. ¶ 14; Soults Decl. ¶ 22. The Tribe supports the Access Amendments and does not want to revisit them.

As a sovereign with inherent powers of self-determination, the Tribe has a right and responsibility to protect its federally-reserved rights and trust resources. Because the Tribe's resource conservation policy is based on collaboration, the Tribe works cooperatively with federal, state, local and community representatives to achieve mutually-agreeable resource management decisions. Soults Decl. ¶ 10. The Kootenai Tribe regularly collaborates with the Forest Service and works to ensure the agency is following sound science to restore forest health and protect forest inhabitants. Aitken Decl. ¶ 8; Soults Decl. ¶¶ 17-21. The Tribe does not



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

trust blindly in federal agency scientific decision making. Rather, when a federal land management project implicates the Kootenai Tribe's ancestral homelands, the Tribe as a sovereign engages with the action agency to ensure the project is grounded in robust science. It does so through the lens of Indian self-determination and does not appreciate the spread of misinformation about land management efforts in Ktunaxa Territory, particularly when that misinformation suggests the Forest Service did not satisfy its Tribal consultation obligations. Aitken Decl. ¶¶ 11-12.

Because the Project is in Ktunaxa Territory, "the Tribe engaged with the Forest Service both at the staff level and through government-to-government consultation during Project development." Soults Decl. ¶ 17. *See also id.* ¶¶ 19-21 (discussing the Tribe's hard look at potential Project impacts on various natural resources). And because the Project is located in the Northwest Peaks and Garver Bear Management Units, the Tribe discussed with the agency "potential proposed action and alternatives impacts and related activities on the bear and ways to avoid the impacts." *Id.* ¶ 19. The Tribe also assessed potential Project impacts on grizzly bear core habitat and the Forest Service's in-kind replacement of core habitat before concluding the Project's approach was "reasonable and appropriate with respect to the Kootenai National Forest Plan and this species of Tribal

importance." *Id.* The Tribe's long view of history enables it to recognize that "the Project area is not managed for the benefit of any one species exclusively but rather is managed to meet the habitat needs of diverse species of importance to the Tribe," *id.* ¶ 20, and to the public.

The foregoing demonstrates the Kootenai Tribe's protectable interest in implementation of the Black Ram Project on the Kootenai National Forest. The protectable interest requirement thus is satisfied.

**3. The Tribe's interests will be impaired if not represented.**

As explained in *Berg*, "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" 268 F.3d at 822 (alteration in original) (quoting FRCP 24 advisory committee's notes). The intervention rule itself shows that the benefit of the doubt goes to a proposed intervenor, explaining that an applicant must be "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest . . . ." FRCP 24(a) (emphasis added).

Absent participation in this case, the Tribe will have no opportunity to defend against plaintiffs' efforts to impede the forest health benefits that will flow from Black Ram Project implementation in Ktunaxa Territory. This element therefore is satisfied.



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

4. **<u>The existing parties do not represent the Tribe's interests.</u>**

The showing required to demonstrate inadequate representation "is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (emphasis in original), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011). The Supreme Court long ago held likewise. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (stating the inadequacy of representation factor requires only a "minimal" showing that the existing parties' representation "may" inadequately represent the movant's interests).

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998). The focus for evaluating this element is on "the subject of the action, not just the particular issues before the court." *Berg*, 268 F.3d at 823 (internal quotation marks omitted).



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Here, in addition to plaintiffs not representing the interests of the Tribe, federal defendants do not adequately represent the Tribe's interests. The Tribe is a sovereign whose interests cannot be represented by another sovereign. Federal defendants' interests, which include the broader interests of the public, are not coterminous with those of the Tribe. Aitken Decl. ¶ 15.

Even if one were to assume the federal defendants will defend the Project zealously, that does not mean they can, or will, adequately represent the interests of the Tribe. The Ninth Circuit recognized this principle in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983), a case in which environmental groups sought to intervene to support procedures establishing the Snake River Birds of Prey Conservation Area:

> We also agree that thus far in this litigation, the government, through the United States Attorney, has continued professionally and diligently to defend the actions of Secretary Andrus; there is no indication in this record of collusion or of any other conduct detrimental to the applicant's interest. Nevertheless, such a showing is not required. This court has consistently followed *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972) in holding that the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests "may be" inadequate and that the burden of making this showing is minimal.

*Sagebrush*, 713 F.2d at 528 (citations omitted).



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

*Berg* further observed that intervenors were not adequately represented by existing defendants where the intervenors "would likely offer important elements to the proceedings that the existing parties would likely neglect." 268 F.3d at 823 (explain that "[t]he priorities of the defending government agencies are not simply to confirm the Applicants' interests . . . . on some issues, Applicants will have to express their own unique private perspectives"). Similarly, allowing the Tribe to intervene will allow it to share its sovereign perspectives on the negative implications of halting Black Ram implementation.

For all these reasons, the Kootenai Tribe has met the minimal showing required to demonstrate that the existing parties do not adequately represent its interests, the final requirement for intervention as of right.

**B. Alternatively, the Court Could Allow Permissive Intervention.**

The Court also could exercise its discretion by allowing permissive intervention under FRCP 24(b). District courts have broad discretion to grant a timely motion for permissive intervention so long as the movant "assert[s] a claim or defense in common with the main action." *Kootenai Tribe*, 313 F.3d at 1110. Timeliness was established above. And as was the case in *Kootenai Tribe*, the Tribe asserts a "defense in common with the main action." *Id.*



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

In *Kootenai Tribe*, a case involving a NEPA challenge to the 2001 Roadless Area Conservation Rule, the Ninth Circuit discussed a district court's broad discretion to grant permissive intervention. Specifically, "a 'significant protectable interest' is not required by Rule 24(b) for intervention, all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Id.* at 1108 (quoting FRCP 24). The court then allowed non-governmental entities to intervene under FRCP 24(b) where they asserted "defenses of the Roadless Rule," *id.* at 1110, and an interest in the use and management of the public lands at issue. *Id.* at 1110-11.

Here, the Kootenai Tribe similarly has demonstrated an interest in defending the Black Ram Project, and in the use and management of the Kootenai National Forest and its natural resources. Aitken Decl. ¶¶ 8-10, 13; Soults Decl. ¶¶ 17-21; Answer of Kootenai Tribe of Idaho. The Court thus could grant permissive intervention.

## VI. CONCLUSION.

The Kootenai Tribe satisfies the four-part test for intervention as of right under FRCP 24(a) to participate in this case on the side of the federal defendants in support of the Black Ram Project. The Tribe likewise satisfies the requirements for permissive intervention under FRCP 24(b). The Tribe therefore asks the Court



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

to allow it to participate in this case as a defendant-intervenor to contribute to the full development of the issues before the Court regarding the Black Ram Project, which is located in the Tribe's aboriginal territory.

Dated this 21st day of October, 2022.

/s/ Kris A. McLean
Kris A. McLean
Tyson A. McLean
Kris A. McLean Law Firm, PLLC

Julie A. Weis
HAGLUND KELLEY LLP
(Motion for admission
*pro hac vice* pending)

*Attorneys for Proposed Intervenor Kootenai Tribe of Idaho*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is comprised of 4,470 words as counted using the word count feature of Microsoft Word, excluding the caption, table of contents, table of authorities, signature blocks, certificate of compliance, and certificate of service.

By: /s/ Kris A. McLean



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October, 2022, I served a true and correct copy of the foregoing document, via CM/ECF on:

Clerk of U.S. District Court

Kristine M. Akland
CENTER FOR BIOLOGICAL DIVERSITY
PO Box 7274
Missoula, MT 59807
kakland@biologicaldiversity.org

Andrea Zaccardi
CENTER FOR BIOLOGICAL DIVERSITY
PO Box 469
Victor, MT 83455
azaccardi@biologicaldiversity.org

*Attorneys for Plaintiffs Center for Biological Diversity, Yaak Valley Forest Council and WildEarth Guardians*

Timothy M. Bechtold
BECHTOLD LAW FIRM
P.O. Box 7051
Missoula, MT 59802

tim@bechtoldlaw.net

*Attorneys for Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council*



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW Broadway
PORTLAND, OR 97201

Sean C. Duffy
U.S. DEPARTMENT OF JUSTICE –
E.N.R.D. GENERAL LITIGATION
601 D Street NW
Washington, DC 20044
sean.c.duffy@usdoj.gov

Erika Furlong
U.S. DEPARTMENT OF JUSTICE –
E.N.R.D. WILDLIFE & MARINE SECTION
150 M Street NE
Washington, DC 20002
erika.furlong@usdoj.gov

*Attorneys for Defendants*

By: /s/ Kris A. McLean