**NOT FOR PUBLICATION**

FILED

FEB 24 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY; YAAK VALLEY FOREST COUNCIL; WILDEARTH GUARDIANS; ALLIANCE FOR THE WILD ROCKIES; NATIVE ECOSYSTEMS COUNCIL,

Plaintiffs - Appellees,

v.

UNITED STATES FOREST SERVICE; CHAD BENSON, in his official capacity as Supervisor of the Kootenai National Forest; LEANNE MARTEN, in her official capacity as Regional Forester for the Northern Region of the U.S. Forest Service; UNITED STATES FISH & WILDLIFE SERVICE; DEBRA HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior; MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service; ADAM ZERRENNER, in his official capacity as Field Supervisor for the U.S. Fish and Wildlife Service's Montana Ecological Services Office; KEITH LANNOM, Deputy Regional Forester, US Forest Service

No. 23-2882

D.C. No.
9:22-cv-00114-DWM

MEMORANDUM*

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Region One; KIRSTEN KAISER, District Ranger, Kootenai National Forest, Three Rivers Ranger District,

Defendants - Appellants,

KOOTENAI TRIBE OF IDAHO,

Intervenor-Defendant.

CENTER FOR BIOLOGICAL DIVERSITY; YAAK VALLEY FOREST COUNCIL; WILDEARTH GUARDIANS; ALLIANCE FOR THE WILD ROCKIES; NATIVE ECOSYSTEMS COUNCIL,

Plaintiffs - Appellees,

v.

CHAD BENSON, LEANNE MARTEN, UNITED STATES FISH & WILDLIFE SERVICE, DEBRA HAALAND, MARTHA WILLIAMS, ADAM ZERRENNER, KEITH LANNOM, KIRSTEN KAISER, UNITED STATES FOREST SERVICE,

Defendants,

KOOTENAI TRIBE OF IDAHO,

Intervenor-Defendant - Appellant.

No. 23-2886

D.C. No. 9:22-cv-00114-DWM

YAAK VALLEY FOREST COUNCIL; CENTER FOR BIOLOGICAL

No. 23-3146

DIVERSITY; WILDEARTH GUARDIANS,

Plaintiffs - Appellants,

and

ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL,

Plaintiffs,

v.

UNITED STATES FOREST SERVICE; CHAD BENSON; LEANNE MARTEN; UNITED STATES FISH & WILDLIFE SERVICE; DEBRA HAALAND; MARTHA WILLIAMS; ADAM ZERRENNER; KEITH LANNOM; KIRSTEN KAISER,

Defendants - Appellees,

KOOTENAI TRIBE OF IDAHO,

Intervenor-Defendant - Appellee.

D.C. No.
9:22-cv-00114-DWM

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted February 6, 2025
Portland, Oregon

Before: BEA, KOH, and SUNG, Circuit Judges.

This appeal involves consolidated cases concerning the Black Ram Project ("Project") in the Kootenai National Forest and its effects on the grizzly bear. Plaintiffs Center for Biological Diversity, Yaak Valley Forest Council, and WildEarth Guardians (collectively, "CBD") along with consolidated plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council (collectively, "AWR") brought suit against the United States Forest Service (the "Forest Service") and the United States Fish and Wildlife Service ("FWS") (collectively, "federal defendants"), alleging that approval of the Project violated the Endangered Species Act ("ESA"), the National Environmental Policy Act ("NEPA"), and the National Forest Management Act ("NFMA"). The Kootenai Tribe of Idaho (the "Tribe") intervened as a defendant.

On cross motions for summary judgment, the district court ruled for CBD on four claims, for AWR on three claims, and for the defendants on five claims. The federal defendants appeal the district court's grant of summary judgment to CBD on CBD's claims 4 and 7 and the district court's grant of summary judgment to AWR on AWR's claims 1 and 3. The Tribe joins the federal defendants' appeal and additionally appeals the district court's grant of summary judgment to CBD on CBD's claim 1. On cross appeal, CBD challenges the district court's grant of summary judgment to the federal defendants on CBD's claim 6.

We review the district court's summary judgment decision de novo.

*Corrigan v. Haaland*, 12 F.4th 901, 906 (9th Cir. 2021). Our review of agency decision-making under the ESA, NEPA, and NFMA is governed by the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543, 551 (9th Cir. 2024) (NEPA claims); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (ESA and NEPA claims); *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005) (NFMA claims). Under the APA, a reviewing court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

1. As an initial matter, AWR argues that the federal defendants lack Article III standing because they appeal some, but not all, of the district court's adverse rulings and do not appeal the vacatur of the underlying project decision. This argument is squarely foreclosed by our precedents. *See All. for Wild Rockies v. Petrick*, 68 F.4th 475, 486-87 (9th Cir. 2023) (holding that the Forest Service had standing where it "challenge[d] what the district court ordered it to do on remand"); *Crow Indian Tribe v. United States*, 965 F.3d 662, 675-76 (9th Cir. 2020) ("FWS has standing[] because its alleged injury—being required to reevaluate certain aspects of [a challenged rule] that it claims are legal—is redressable by a favorable decision."). The district court ordered the federal

defendants to remedy multiple discrete statutory violations. "Because the manner in which the [federal defendants] would reevaluate [the Project] on remand would be altered by a favorable decision by this court," their injury is redressable, and the federal defendants have standing. *Crow Indian Tribe*, 965 F.3d at 676.

2. We reverse the district court's grant of summary judgment to CBD on CBD's claim 4 and hold that the grizzly bear population estimate in the FWS biological opinion's environmental baseline satisfies the ESA's best available data requirement. *See* 16 U.S.C. § 1536(a)(2) (stating that agencies "shall use the best scientific and commercial data available").

In its biological opinion, FWS relied on a peer-reviewed study that used a well-established statistical method to estimate the baseline population of grizzly bears. FWS's reasonable determination that this study was the best available data is entitled to deference. *See San Luis & Delta-Mendota Water Auth.*, 747 F.3d at 602 ("The determination of what constitutes the '*best* scientific data available' belongs to the agency's 'special expertise.'" (first quoting 16 U.S.C. § 1536(a)(2); then quoting *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983))).

The district court nonetheless concluded that FWS had violated the best available data requirement because it "disregarded biological information indicating an increase in grizzly bear mortality" and "ignore[d] the issue of female

bear mortality altogether." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 687 F. Supp. 3d 1053, 1068-69 (D. Mont. 2023) [hereinafter "*MSJ Opinion*"]. Specifically, the district court faulted FWS for failing to consider documented bear mortalities and failing to adequately credit annual minimum count data that showed a decline in the number of bears detected between 2017 and 2020. *See id.* However, the study that FWS relied on for its grizzly bear population estimate directly incorporated bear mortality—both reported and unreported—into its population modeling. Moreover, FWS explicitly considered the annual minimum count data, but reasonably explained that this methodology over-simplified population biology. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 995 (9th Cir. 2014) ("An agency complies with the best available science standard so long as it does not ignore available studies, even if it disagrees with or discredits them.").

Because FWS relied on a sound statistical method and considered all relevant factors in establishing the environmental baseline for grizzly bears in its biological opinion, the district court erred in holding that FWS violated the ESA's best available data requirement.

3. We reverse the district court's grant of summary judgment to CBD on CBD's claim 7. An agency violates the ESA if it relies on a legally flawed biological opinion. *See Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,

698 F.3d 1101, 1127-28 (9th Cir. 2012). Here, the district court determined that FWS's biological opinion was flawed *only* because it "failed to use the best available science to create its environmental baseline for grizzly bears." *MSJ Opinion*, 687 F. Supp. 3d at 1072. As discussed above, this conclusion was error. Therefore, it was not arbitrary and capricious for the Forest Service to approve of the Project pursuant to the biological opinion.

4. We reverse the district court's grant of summary judgment to CBD on CBD's claim 1. Although it was error under NEPA for the Forest Service to rely on stale grizzly bear population data in establishing the environmental baseline in its final environmental assessment, this error was harmless. *See* 5 U.S.C. § 706 (reviewing courts shall take "due account . . . of the rule of prejudicial error"). "The harmless-error analysis asks whether the failure to consult materially impeded NEPA's goals—that is, whether the error caused the agency not to be fully aware of the environmental consequences of the proposed action, thereby precluding informed decision[-]making and public participation, or otherwise materially affected the substance of the agency's decision." *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1104 (9th Cir. 2016).

Here, CBD has failed to identify how the Forest Service's citation to the stale data materially affected the agency's decision or public participation. In its final environmental assessment, which was issued in June 2022, the Forest Service

cited a study estimating the grizzly bear population as of 2017. The grizzly bear population data that became available between 2017 and 2022, however, did not reflect a meaningfully different condition for the grizzly bear. Indeed, updated data reflected potential *improvement* in the grizzly bear's condition. The 2017 population estimate was 55 to 60 bears, whereas the 2021 population estimate was 60 to 65 bears. Considering these facts, newer data would not have altered the Forest Service's analysis or decision, and CBD has failed to articulate any way in which public participation could have been materially affected. *See Idaho Wool Growers*, 816 F.3d at 1104.

5. We affirm the district court's grant of summary judgment to AWR on AWR's claim 1 and hold that the Forest Service failed to demonstrate compliance with Standard FW-STD-WL-02 of the Access Amendments ("Access Standard 2") in the 2015 Kootenai National Forest Plan in violation of NFMA. *See Native Ecosystems Council*, 418 F.3d at 961 ("Under NFMA . . . we must still be able reasonably to ascertain from the record that the Forest Service is in compliance with [the forest plan's standards]."). Specifically, because the extent to which the Forest Service included unauthorized road use in its core habitat and road density calculations is unclear, it is impossible to discern from the record whether the Project has complied with Access Standard 2.

The Access Amendments do not differentiate between authorized and

unauthorized road use, nor does a plain reading of the relevant definitions for road density metrics suggest that unauthorized road use can be excluded from core habitat and road density calculations. Rather, the Access Amendments' road density definitions explicitly contemplate the effectiveness of road closures and actual functionality of roads. Therefore, the Forest Service may not exclude categorically documented unauthorized road use. *See All. for Wild Rockies v. Bradford*, 856 F.3d 1238, 1243 (9th Cir. 2017) (explaining that "any closure that fails to effectively prevent motorized access also fails to comply with [Access Standard 2]").

The federal defendants argue that unauthorized road use need not have been counted because Access Standard 2 limits only permanent road mileage. The federal defendants assert that the Forest Service "promptly" fixes unauthorized road use issues and that "unauthorized use on any given route is *not* chronic from year to year." Although the federal defendants correctly argue that Access Standard 2 places restrictions only on permanent routes, the record belies the federal defendants' blanket assertion that unauthorized road use is sporadic and temporary. Rather, the record shows that unauthorized road use was observed in the Project's action area during three of eight monitored years and that only a small fraction of gate and barrier breaches are promptly repaired. Given the uncertainty as to the extent of ineffective closures and chronic unauthorized road use, it is

impossible to discern actual, baseline motorized access conditions. Therefore, in violation of NFMA, it is also impossible to discern whether the Project complies with Access Standard 2. *See All. for Wild Rockies v. Savage*, 897 F.3d 1025, 1035 (9th Cir. 2018) ("[T]he Forest Service's 'failure to measure [linear road miles] as defined by the [Access Amendments] renders us unable to determine from the record that the agency is complying with the forest plan standard.'" (second and third alterations in original) (quoting *Hapner v. Tidwell*, 621 F.3d 1239, 1250 (9th Cir. 2010))).

Of note, the district court also determined that the Forest Service obscured its methodology for how compliance with Access Standard 2 was calculated in violation of NEPA. *See MSJ Order*, 687 F. Supp. 3d at 1082. NEPA requires agencies to "identify any methodologies used" and "make explicit reference by footnote to the scientific and other sources relied upon for conclusions in the statement." 40 C.F.R. § 1502.24 (2018).[1] We do not agree that the Forest Service failed to comply with this specific procedural regulation in its final environmental assessment. The Forest Service identified the metrics it used to measure changes to core grizzly bear habitat and road densities and identified the source of these

---

[1] NEPA's implementing regulations were updated in 2020. *See* Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43,304 (July 16, 2020). As the agencies applied the previous regulations to the Project, so do we. *See Bair v. Cal. Dep't of Transp.*, 982 F.3d 569, 577 n.20 (9th Cir. 2020).

metrics as the Access Amendments. It further explained that these metrics would be calculated using geographic information system (GIS) applications. This satisfies the methodological requirements of § 1502.24. We decline to require that the Forest Service explain its methodology with more specificity than the implementing regulation requires. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 472 (9th Cir. 2010) ("Courts may not impose procedural requirements not explicitly enumerated in the pertinent statutes." (internal quotation marks and citation omitted)).

Nonetheless, because the Forest Service failed to demonstrate substantive compliance with Access Standard 2 in violation of NFMA, we affirm the district court's grant of summary judgment to AWR on AWR's claim 1.

6. We affirm the district court's grant of summary judgment to AWR on AWR's claim 3 and hold that the Forest Service failed to take a "hard look" at unauthorized road use in violation of NEPA. Under NEPA, an agency's "assessment of baseline conditions 'must be based on accurate information and defensible reasoning.'" *Great Basin Res. Watch v. Bureau of Land Mgmt.*, 844 F.3d 1095, 1101 (9th Cir. 2016) (quoting *Oregon Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 570 (9th Cir. 2016)); *see also Native Ecosystems Council*, 418 F.3d at 964 ("To take the required 'hard look' at a proposed project's effects . . . an agency may not rely on incorrect assumptions or data.").

As discussed above, the Forest Service's analysis of baseline conditions and the Project's compliance with Access Standard 2 was premised on unsupported assumptions that unauthorized roads use is sporadic and temporary, and that ineffective barriers and road closures would be promptly repaired. The Forest Service's "failure to explain [these] baseline assumption[s] frustrated [its] ability to take a 'hard look'" at the effects of unauthorized road use. *Great Basin Res. Watch.*, 844 F.3d at 1104.

7. On cross appeal, we affirm the district court's grant of summary judgment to the federal defendants on CBD's claim 6 and hold that FWS's no jeopardy determination was not arbitrary and capricious. FWS evaluated all relevant factors and reasonably concluded that the Project was not likely to jeopardize the existence of the species as a whole. *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(g)(4), (h)(1)(iv); *see also* 50 C.F.R. § 402.02 ("*Jeopardize the continued existence of* means to engage in an action that reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers or distribution of that species.").

FWS concluded that the Project could have adverse effects on a few individual female grizzly bears but explained that these effects were "expected to be non-lethal" and could "decrease[] reproduction for 1-2 reproductive cycles."

FWS's conclusion that a temporary reduction in reproduction for a few individual bears would not jeopardize the species as a whole was reasonable. *See Rock Creek All. v. U.S. Fish & Wildlife Serv.*, 663 F.3d 439, 443 (9th Cir. 2011) (upholding a no jeopardy determination for the bull trout even where FWS concluded "the *rate of recovery* of the core area population may slow slightly").

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[2]

[2] Each party shall bear its own costs associated with this appeal.