Rebecca K. Smith
Public Interest Defense Center, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Consolidated Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br>Plaintiffs,<br>and<br><br>ALLIANCE FOR THE WILD ROCKIES, et al.,<br>Consolidated Plaintiffs,<br>vs.<br><br>U.S. FOREST SERVICE, et al,<br>Defendants,<br><br>KOOTENAI TRIBE OF IDAHO,<br>Defendant-Intervenor,<br>and<br><br>KIRSTEN KAISER, et al.,<br>Consolidated Defendants. | Lead Case No.<br>CV 22-114-M-DWM<br><br>Member Case No.<br>CV 23-3-M-DWM<br><br>BRIEF IN SUPPORT OF CONSOLIDATED PLAINTIFFS' RE-FILED MOTION FOR ATTORNEYS' FEES & OTHER COSTS & EXPENSES |

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Alliance is an eligible prevailing party. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. The government's position was not substantially justified.. . . . . . . . . . . 4

C. Alliance's requested rates are reasonable.. . . . . . . . . . . . . . . . . . . . . . . 7

D. Alliance's requested hours are reasonable. . . . . . . . . . . . . . . . . . . . 15

E. Others costs and expenses should be awarded. . . . . . . . . . . . . . . . . . 18

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

All. for Wild Rockies v. Bradford, 856 F.3d 1238 (9th Cir. 2017) . . . . . . . . . . . . . . 6

All. for Wild Rockies v. Savage, 897 F.3d 1025 (9th Cir. 2018). . . . . . . . . . . . 6, 14

Alliance for the Wild Rockies v. Savage, 2019 WL 3293425 (D.Mont. 2019) . . . 13

Ardestani v. I.N.S., 502 U.S. 129 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

City of Burlington v. Dague, 505 U.S. 557 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . 7

City of Riverside v. Rivera, 477 U.S. 561 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Commissionerr, I.N.S. v. Jean, 496 U.S. 154 (1990) . . . . . . . . . . . . . . . . . . . . . 2, 15

Crow Indian Tribe v. United States, 2021 WL 3142155 (D. Mont 2021) . 16, 17, 18

Ctr. for Biological Diversity v. United States Forest Serv.,
2025 WL 586358 (9th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Goos v. National Association of Realtors, 68 F.3d 1380 (D.C. Cir. 1995) . . . . . . 16

Greenpeace v. Stewart, 2020 WL 2465321 (9th Cir. 2020) . . . . . . . . . . . . . . 15, 16

Hapner v. Tidwell, 621 F.3d 1239 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 6, 13

Hensley v. Eckerhart, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

Li v. Keisler, 505 F.3d 913 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Love v. Reilly, 924 F.2d 1492 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . passim

Meinhold v. U.S. Department of Defense, 123 F.3d 1275 (9th Cir. 1997). . . . . . 5, 6

Moreno v. City of Sacramento, 534 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . 15

Native Ecosystems Council v. Krueger, 2019 WL 1489839 (D.Mont. 2019) . . . . 13

Natural Resources Defense Council v. EPA, 703 F.2d 700 (3rd Cir. 1983). . . . . . . 5

Perkins v. Mobile Housing Board, 847 F.2d 735 (11th Cir. 1988) . . . . . . . . . . . . 15

Sullivan v. Hudson, 490 U.S. 877 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Vogel v. Harbor Plaza Ctr., LLC, 893 F.3d 1152 (9th Cir. 2018) . . . . . . . . . . . . . . 4

Woods v. Graphics Communications, 925 F.2d 1195 (9th Cir. 1991) . . . . . . . . . . 16

**STATUTES**

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

# I. INTRODUCTION

Consolidated Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council (hereinafter "Alliance") respectfully refile this motion for attorneys' fees and other expenses under the Equal Access to Justice Act (EAJA). 28 U.S.C. § 2412(d). Federal Defendants have been contacted regarding this motion and they reserve their position on the motion until they review the motion.

On August 17, 2023, this Court entered summary judgment in Alliance's favor on the three claims that Alliance briefed (Claims One, Three, and Five), and vacated the Black Ram Environmental Assessment and Finding of No Significant Impact. Doc. 94; Doc.93. Federal Defendants appealed two of the claims for which judgment was entered in Alliance's favor (Claims One and Three), and the Ninth Circuit rejected the appeals and affirmed this Court on both appealed claims. Doc. 108. On April 18, 2025, the Ninth Circuit issued its mandate. Doc. 109. On April 25, 2025, the Ninth Circuit granted Alliance's motion to transfer consideration of attorney fees on appeal to this Court.

This Court's December 4, 2023 Order, Doc. 107, states: "Plaintiffs may refile their motion within 30 days of the resolution of the appeal." Now that the mandate has issued, and the Ninth Circuit has transferred consideration of attorney fees on appeal to this Court, Alliance respectfully refiles its motion for attorney fees and other expenses under EAJA.

## II. ARGUMENT

Alliance moves for fees and other expenses under EAJA, which authorizes an award of attorney's fees and other expenses for a "prevailing party." 28 U.S.C. § 2412 (d)(1). The Supreme Court holds: "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163–65 (1990). In *Jean*, the Supreme Court quoted the House and Senate Committee Reports at length:

> civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. . . . Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their right.

496 U.S. at 165 n.14 (quoting S.Rep. No. 96–253, p. 7 (1979) and H.R.Rep. No. 96–1418, p. 12 (1980).

Therefore, "removing disincentives to adjudication when the Government acts unreasonably both vindicates individual rights and curbs governmental excesses." *Id.* Accordingly, EAJA must be read and applied in a manner that is consistent with its purpose "to diminish the deterrent effect of seeking review of . . . governmental action[.]" *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989).

In line with such a reading, the Ninth Circuit has "acknowledged that the policy goal of EAJA is to encourage litigants to vindicate their rights where any

level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court." *Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007). The Supreme Court has repeatedly reaffirmed these considerations: "EAJA's purposes are clearly stated. . . . the high cost of legal assistance and the superior resources and expertise of the Federal Government precluded private parties from challenging or defending against unreasonable governmental action. []. Fee awards were intended to address this problem [.]" *Ardestani v. I.N.S.*, 502 U.S. 129, 142 (1991).

EAJA provides that a court "shall" award attorney's fees to an eligible "prevailing party" in a civil action brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust." 28 U.S.C.§ 2412(d)(1). "Once a party's eligibility has been proven, an award of fees under EAJA is *mandatory* unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991)(emphasis added). In other words, "EAJA creates a presumption that fees will be awarded unless the government's position was substantially justified." *Thomas*, 841 F.2d at 335.

**A. Alliance is an eligible prevailing party.**

Eligible parties under EAJA include 501(c)(3) tax exempt organizations with

fewer than 500 employees at the time the action was filed. 28 U.S.C. § 2412 (d)(2)(B). Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council meet this requirement and are therefore eligible.

Additionally, Alliance is a prevailing party. This Court entered summary judgment in Alliance's favor on Claims One, Three, and Five, and vacated the agency decision and analysis. Doc. 93 at 62. Federal Defendants did not appeal the remedy, but they did appeal the judgment regarding Claims One and Three and Alliance successfully defended against their appeal, with the Ninth Circuit affirming this Court on both appealed claims on February 25, 2025. Doc. 108. Therefore, Alliance is the prevailing party in this Court and in the Ninth Circuit appeal, and the entire Black Ram Project remains vacated.

Under Supreme Court precedent, therefore, Alliance is "indisputably a prevailing party, because [it] has secured an enforceable judgmenton the merits." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)(quoting *Buckhannon*, 532 U.S. at 603–04)(internal brackets and quotation marks omitted). Accordingly, "an award of fees under EAJA is mandatory unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love*, 924 F.2d at 1495.

**B. The government's position was not substantially justified.**

"EAJA creates a presumption that fees will be awarded unless the

government's position was substantially justified." *Thomas*, 841 F.2d at 335. "For its action to be substantially justified, the government must make a 'strong showing' that its position was substantially justified." *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 712 (3rd Cir. 1983))(citation omitted). "If the government's position violates the Constitution, a statute, or its own regulations, a finding that the government was substantially justified would be an abuse of discretion." *Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1278 (9th Cir. 1997).

In this case, the government cannot meet its burden to make a "strong showing" that all of its conduct was substantially justified because its approval of the Black Ram Project violated the agency's own regulations – its own forest plan standards for grizzly bears. *See id.* Affirming this Court, the Ninth Circuit held:

> We affirm the district court's grant of summary judgment to AWR on AWR's claim 1 and hold that the Forest Service failed to demonstrate compliance with Standard FW-STD-WL-02 of the Access Amendments ("Access Standard 2") in the 2015 Kootenai National Forest Plan in violation of NFMA. *See Native Ecosystems Council*, 418 F.3d at 961 ("Under NFMA ... we must still be able reasonably to ascertain from the record that the Forest Service is in compliance with [the forest plan's standards]."). Specifically, because the extent to which the Forest Service included unauthorized road use in its core habitat and road density calculations is unclear, it is impossible to discern from the record whether the Project has complied with Access Standard 2.
>
> The Access Amendments do not differentiate between authorized and unauthorized road use, nor does a plain reading of the relevant definitions for road density metrics suggest that unauthorized road use can be excluded from core habitat and road density calculations.

> Rather, the Access Amendments' road density definitions explicitly contemplate the effectiveness of road closures and actual functionality of roads. Therefore, the Forest Service may not exclude categorically documented unauthorized road use. *See All. for Wild Rockies v. Bradford*, 856 F.3d 1238, 1243 (9th Cir. 2017) (explaining that "any closure that fails to effectively prevent motorized access also fails to comply with [Access Standard 2]").
>
> The federal defendants argue that unauthorized road use need not have been counted because Access Standard 2 limits only permanent road mileage. The federal defendants assert that the Forest Service "promptly" fixes unauthorized road use issues and that "unauthorized use on any given route is not chronic from year to year." Although the federal defendants correctly argue that Access Standard 2 places restrictions only on permanent routes, the record belies the federal defendants' blanket assertion that unauthorized road use is sporadic and temporary. Rather, the record shows that unauthorized road use was observed in the Project's action area during three of eight monitored years and that only a small fraction of gate and barrier breaches are promptly repaired. Given the uncertainty as to the extent of ineffective closures and chronic unauthorized road use, it is impossible to discern actual, baseline motorized access conditions. Therefore, in violation of NFMA, it is also impossible to discern whether the Project complies with Access Standard 2. *See All. for Wild Rockies v. Savage*, 897 F.3d 1025, 1035 (9th Cir. 2018) ("[T]he Forest Service's 'failure to measure [linear road miles] as defined by the [Access Amendments] renders us unable to determine from the record that the agency is complying with the forest plan standard.' " (second and third alterations in original) (*quoting Hapner v. Tidwell*, 621 F.3d 1239, 1250 (9th Cir. 2010))).

*Ctr. for Biological Diversity v. United States Forest Serv.*, 2025 WL 586358, at *3 (9th Cir. Feb. 24, 2025). Because the Forest Service has violated its own regulations, i.e. its own forest plan, there cannot be a finding of substantial justification here. *Meinhold*, 123 F.3d at 1278.

The agency also bears the burden of proving any special circumstances that would make an award unjust. *Love*, 924 F.2d at 1495. Here, Alliance is unaware of any special circumstances that would make an award unjust.

**C. Alliance's requested rates are reasonable.**

EAJA provides that a court shall award "reasonable attorney fees" to prevailing parties. 28 U.S.C. § 2412(d)(2)(A). An EAJA application should include "the amount sought, including an itemized statement from any attorney . . . representing or appearing on behalf of the party stating the actual time expended and the rate at which fees . . . were computed." 28 U.S.C. § 2412(d)(1)(B). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is also referred to as the 'lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Alliance has calculated this "lodestar" amount. *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992). There is a "strong presumption" that the "lodestar" amount represents a "reasonable fee." *Id.* at 561. This is especially true in cases involving the vindication of the public interest, such as this case. *City of Riverside v. Rivera*, 477 U.S. 561, 572 (1985).

Every year, the Ninth Circuit calculates cost of living increases and applies

them to the EAJA statutory rate.[1] The rates from 2020 to 2024 are set forth below:

| Year | EAJA Statutory Rate, Adjusted for Cost of Living Increases | Annual Increase |
|---|---|---|
| 2020 | $207.78 | N/A |
| 2021 | $217.54 | $9.76 |
| 2022 | $234.95 | $17.41 |
| 2023 | $244.62 | $9.67 |
| 2024 | $251.84 | $7.22 |
| | **Average annual increase** | **$11.02** |

As set forth above, the average annual increase for cost of living adjustments alone is an increase of $11.02 per year.

However, EAJA does not only allow for annual cost of living adjustments, it also allows for annual increases to reflect specialized expertise. 28 U.S.C. § 2412(d)(2)(A). To justify an enhancement from the base EAJA rate on this basis, "[f]irst, the attorney must possess distinctive knowledge and skills developed through a practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rates." *Love*, 924 F.2d at 1495.

The Ninth Circuit has expressly recognized environmental law as a specialized practice area warranting fee enhancements under EAJA: "Environmental

---

[1] https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/

litigation is an identifiable practice specialty that requires distinctive knowledge." *Love*, 924 F.2d at 1496.

Alliance's attorneys both possess this distinctive knowledge and therefore warrant this fee enhancement. Smith has distinctive knowledge and skills developed through a practice specializing in environmental law. She is licensed to practice law in state and federal courts in Montana and Idaho, as well as before the Ninth Circuit Court of Appeals. She has been a member of the State Bar of Montana since October 2008. She is also an adjunct law professor at the Alexander Blewett III School of Law at the University of Montana, where she teaches Appellate Advocacy and serves as the head coach of the National Environmental Moot Court team. In 2018, she received a lifetime achievement award – the Kerry Rydberg Award for Excellence in Public Interest Environmental Law – from the University of Oregon School of Law - Public Interest Environmental Law Conference. Smith Declaration ¶¶1-3.

Smith has presented lectures on federal environmental law for the University of Montana ABIII School of Law's Public Land and Resources Law Review Conference, the Vermont Law School's Montana Field Study course, and the University of Oregon's Public Interest Environmental Law Conference. She received her law degree in 2008 from the University of Montana School of Law. She graduated with high honors as Class Valedictorian, and received a Certificate in

Environmental and Natural Resources Law. While in law school she served two years, first as a staff member and then as an editor, on the Public Land & Resources Law Review, and was a member of the National Moot Court team. In law school, she also published three scholarly articles on environmental policy issues. In 2008, she also received her master's degree – Masters of Science in Environmental Studies – from the University of Montana Graduate School. Smith Declaration ¶¶ 4-6.

Smith's law practice emphasizes public interest environmental litigation, with a particular specialization in conservation issues related to public land and wildlife management in Montana and Idaho. She has worked on dozens of cases involving federal environmental law. She has secured successful rulings for clients in Montana, Idaho, and the Ninth Circuit. Smith Declaration ¶7. She is considered to be a specialist with distinctive skills in federal environmental law by the non-profit environmental community, and her services are highly sought after by that community. Smith Declaration ¶ 8.

Similarly, Bechtold has distinctive knowledge and skills developed through a practice specializing in environmental law. Bechtold received an A.B. from Harvard College in 1984, with an academic concentration in biology, with a focus on ecology. He received an M.S. in Environmental Studies from the University of Montana in 1992. He received a J.D. with high honors from the University of Montana in 2000, and was admitted to the Montana bar on October 6, 2000. While

in law school, he was editor of the Public Land and Resources Law Review, and published a law review article on the listing of the bull trout under the Endangered Species Act. He clerked for the Honorable Donald W. Molloy, then Chief Judge of the District of Montana, for two years. Declaration of Tim Bechtold ¶¶1-2.

Bechtold specializes primarily in the litigation of environmental matters. He taught a graduate-level seminar on the National Forest Management Act and the National Environmental Policy Act at the University of Montana, and has been a guest lecturer on environmental topics at the University of Montana School of Law and the Vermont Law School, and has presented on environmental topics at Continuing Legal Education seminars. His case load includes dozens of suits involving environmental restoration and remediation, management of federal public land and wildlife, land use, citizen suits under the Clean Water Act, as well as suits brought under the citizen suit and cost recovery provisions of CERCLA and RCRA. In 2019, he was awarded the Kerry Rydberg Award for Excellence in Public Interest Environmental Litigation at the Public Interest Environmental Law Conference. This award is presented annually to one attorney in the United States for lifetime achievements in the practice of public interest environmental law. Bechtold Declaration ¶¶7-9.

Thus, Smith and Bechtold have distinctive knowledge and skill from their specialty practices in federal environmental law. These "distinctive skills [were]

needed in the litigation." *Love*, 924 F.2d at 1495. This case was a challenge to a federal agency action that required knowledge of multiple federal environmental laws, as well as knowledge of federal court rules and procedures in both the district court and appellate court. Additionally, this case required knowledge, understanding, and review of complicated scientific documents including scientific studies related to wildlife biology and habitat management. Thus, the attorneys' understanding and experience with federal environmental law and environmental sciences was necessary for the success of this case.

This Court determined reasonable fee rates for Alliance's attorneys in two separate fee orders in 2019:

> the Court recognizes a 2018 hourly rate of $340 as fair and consistent for an attorney of Mr. Bechtold's caliber.
> . . .
> The Court has already determined that an hourly rate of $340 for work performed by an experienced and highly capable environmental attorney in the handling of a complex matter is reasonable. Therefore, $340 is a fair rate for Ms. Smith assuming that she is an attorney of "comparable experience, skill and reputation."
>
> Having reviewed Ms. Smith's qualifications along with the Court's knowledge of Ms. Smith from her previous appearances, the Court is convinced that she is deserving of a competitive rate. Ms. Smith holds a graduate degree in Environmental Studies and a J.D. with a certificate in Environmental Law. During law school, Ms. Smith was an editor of the Public Land and Resources Law Review, a member of the National Moot Court Team, and published three scholarly articles on environmental policy issues. Not only did she graduate with high honors, but Ms. Smith was class valedictorian. Now, a decade into

> private practice, Ms. Smith is a sought-after litigator with extensive courtroom experience.
> . . .
> Ms. Smith . . . is now a decade into her career and from the Court's evaluation of her work, she has obtained significant expertise. In evaluating an attorney's experience, the Court considers not only Ms. Smith's experience as an environmental litigator and leading attorney at her firm, but it considers the crucial role Ms. Smith played in this litigation and the value she brings her clients as a "highly effective" oral advocate.

*Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *5 (D. Mont. 2019).

Several months later, this Court issued a fee order in a different case and held:

> A generalist could not have litigated this case with the same degree of success; and a gifted but inexperienced environmental lawyer would have spent significantly more time preparing this case. Smith and Bechtold have substantial experience in environmental litigation, and "knowledge [and] specialized skill" such as theirs is essential for complex, technical cases such as this.
> . . .
> Both Smith and Bechtold are excellent, experienced environmental litigators. . . . solidly in the prime of their careers and operating at the highest level of public interest environmental litigation in Montana.

*Alliance for the Wild Rockies v. Savage*, 2019 WL 3293425, at *6–7 (D. Mont. 2019). Based upon this analysis, this Court held that a reasonable market rate for Smith and Bechtold was $350/hour in district court in 2019. *Id* at *7. This Court also authorized "an additional $100/hour for appellate work" consistent with a prior order of the Ninth Circuit Appellate Commissioner. *Id* at *7.

In this fee motion, Smith and Bechtold request an annual rate increase that acknowledges that the Ninth Circuit EAJA rate increases on average by $11/hour each year to account for cost of living adjustments alone, as explained above, and that the average annual rate increase must account for both the cost of living adjustment ($11/hour) and increased years of expertise under EAJA. Thus, the requested rates, incorporating both cost of living adjustments and additional years of experience/expertise are as follows:

| **Year & Court** | **Rate** |
|---|---|
| 2020 District Court | $370 |
| 2021 District Court | $390 |
| 2022 District Court | $420 |
| 2023 District Court | $460 |
| 2023 Appellate Court | $560 |
| 2024 Appellate Court | $600 |
| 2025 Appellate Court | $640 |
| 2025 District Court | $540 |

These rates are based on the rates awarded in *Savage*, with a $20 per year increase for 2020 and 2021, a $30 per year increase in 2022, and a $40 per year increase in 2023 and 2025.

Moreover, pursuant to a fee order issued by the Ninth Circuit Appellate Commissioner, these rates are requested for all hours, including hours expended on

the fee motion: "USFS's contention lacks merit and Greenpeace's attorneys will be compensated at their market rates for reasonable hours expended during all stages of the proceedings, including the fee litigation." *Greenpeace v. Stewart*, 2020 WL 2465321, at *5–6 (9th Cir. 2020).

**D. Alliance's requested hours are reasonable.**

The Supreme Court holds: "absent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action. . . . EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62.

The hours expended on this case were not incurred on unreasonably dilatory conduct, but instead on reasonable and necessary tasks. Smith Declaration ¶¶ 10-12. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time [s]he was required to spend on the case; after all, [s]he won, and might not have, had [s]he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Counsels' "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required." *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).

As the D.C. Circuit has explained, "[t]he key question is whether the work

was reasonably done in pursuit of the ultimate result. In other words, would a private attorney being paid by a client reasonably have engaged in similar time expenditures?" *Goos v. National Ass'n of Realtors*, 68 F.3d 1380, 1385-1386 (D.C. Cir. 1995); *see also Woods v. Graphics Communications*, 925 F.2d 1195, 1207 (9th Cir. 1991).

The Ninth Circuit Appellate Commissioner recently held: "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Greenpeace*, 2020 WL 2465321, at *8 (citation omitted)(emphasis added).

In *Crow Indian Tribe*, this Court addressed fee motions in the consolidated cases challenging the Yellowstone grizzly bear delisting. *Crow Indian Tribe v. United States*, No. CV 17-117-M-DLC, 2021 WL 3142155, at *1 (D. Mont. July 26, 2021). One group of plaintiffs (Wildearth Guardians, et al) had expended 1,616.47 hours on the district court and appellate court litigation. *Id* at n.9. Another group of plaintiffs (Northern Cheyenne et al) had expended 1,259.2 hours on the district court and appellate court litigation. *Id.*

The government argued that these actual time expenditures were unnecessary and therefore excessive, and this Court rejected the argument:

> the Court is troubled by Federal Defendants general insinuation that Mr. Preso and Mr. Bishop's vigorous advocacy was unnecessary, improper, or—even worse—unethical. Nothing could be further from

> the truth. The Court is very familiar with Mr. Preso and Mr. Bishop, both of whom are experienced environmental attorneys that have appeared before the Court many times. Mr. Preso and Mr. Bishop are attorneys of the highest caliber, who—by all appearances—exercised sound judgment with regard to their case management decisions here. Their briefs were clear and concise, and distilled the environmental science into a digestible form which aided the Court in its analysis of the issues. Both attorneys are exceptional oral advocates with impeccable courtroom demeanor, and they argued persuasively at the Court's hearing on summary judgment and on appeal.
> . . .
>
> The Court has already determined that Plaintiffs' hours spent on the merits of the case are reasonable and thus fully compensable. On whole, the Court has found Federal Defendants arguments to the contrary unpersuasive.

*Crow Indian Tribe*, 2021 WL 3142155, at ** 7 -10.

Similarly here, in this case, Alliance's attorneys expended reasonable hours engaged in normal and justified tasks associated with careful, conscientious prosecution of a lawsuit against an agency that vigorously defended its actions under an extensive administrative record, appealed its loss, and then lost its appeal with regard to Alliance's claims. In compiling these totals, Alliance's attorneys carefully reviewed their contemporaneous time entries to ensure that no hours were excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 433-34; Smith Declaration ¶¶ 10-12; Bechtold Declaration ¶¶13-16. Therefore, fees are warranted for all hours incurred in this case. *See Crow Indian Tribe*, 2021 WL 3142155, at ** 7 -10.

## E. Others costs and expenses should be awarded.

Alliance has filed a bill of costs for the $402.00 filing fee for the Complaint. Smith Declaration ¶13. Additionally, Alliance seeks $806.48 for the travel expenses it incurred to defend against the government's unsuccessful appeal. *Id.*

## III. CONCLUSION

In conclusion, Alliance respectfully requests the following:

| | RATE | HOURS | FEES |
|---|---|---|---|
| **SMITH** | | | |
| 2022 DISTRICT COURT | 420 | 109.4 | $45,948.00 |
| 2023 DISTRICT COURT | 460 | 232.4 | $106,904.00 |
| 2023 APPELLATE COURT | 560 | 1.4 | $784.00 |
| 2024 APPELLATE COURT | 600 | 141.0 | $84,600.00 |
| 2025 APPELLATE COURT | 640 | 90.6 | $57,984.00 |
| 2025 DISTRICT COURT | 540 | 13.7 | $7,398.00 |
| | | **TOTAL** | **$303,618.00** |
| **BECHTOLD** | | | |
| 2020 DISTRICT COURT | 380 | 3.4 | $1,292.00 |
| 2021 DISTRICT COURT | 390 | 13.1 | $5,109.00 |
| 2022 DISTRICT COURT | 420 | 8.8 | $3,696.00 |
| 2023 DISTRICT COURT | 460 | 18.6 | $8,556.00 |
| 2023 APPELLATE COURT | 560 | 2.1 | $1,176.00 |
| 2024 APPELLATE COURT | 600 | 6.7 | $4,020.00 |
| 2025 APPELLATE COURT | 640 | 3.5 | $2,240.00 |
| | | **TOTAL** | **$26,089.00** |

| | | | |
|---|---|---|---|
| FILING FEE | | | $402.00 |
| APPEAL TRAVEL COSTS | | | $806.48 |
| | | **GRAND TOTAL** | **$330,915.48** |

In *Ibrahim v. U.S. Department of Homeland Security*, the Ninth Circuit held: "[a] full award of attorneys' fees here is consistent with the EAJA's goal of creating a level playing field in cases in which there is an imbalance of power and resources." 912 F.3d 1147, 1179–80 (9th Cir. 2019). The same is true in this case.

For all of these reasons, Alliance respectfully requests that the Court grant this motion for $330,915.48 in fees and costs.

Respectfully submitted this 25th Day of April, 2025.

*/s/ Rebecca K. Smith*
REBECCA K. SMITH
Public Interest Defense Center, P.C.

Timothy M. Bechtold
Bechtold Law Firm, PLLC

Attorneys for Consolidated Plaintiffs

CERTIFICATE OF COMPLIANCE

This brief contains 4,310 words excluding caption, tables, certificate, and signature blocks.

Respectfully submitted this 25th Day of April, 2025.

*/s/ Rebecca K. Smith*
REBECCA K. SMITH
Public Interest Defense Center, P.C.